## IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

## ORAL ARGUMENT IS REQUESTED

## 15-1308

P&S LLC,

Plaintiff-Appellee,

v.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,

Defendant-Appellant.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
No. 14-CV-00735
(HON. LEWIS T. BABCOCK)

### APPELLANT'S OPENING BRIEF

Leonard H. MacPhee
Perkins Coie LLP
1900 Sixteenth Street, Suite 1400
Denver, CO 80202
Telephone: (303) 291-2300
Facsimile: (303) 291-2400

## CORPORATE DISCLOSURE STATEMENT

The sole member of P&S is PEM LLC, a Delaware limited liability

company.  PEM LLC has two members: Patrick E. Meyers and PEM Children's

Trust.  No publicly held entity owns any interest in P&S.

i

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ........................................................i

TABLE OF CONTENTS....................................................................... ii

TABLE OF AUTHORITIES ...................................................................iv

STATEMENT OF RELATED CASES (10th Cir. 28.2(C)(1) ....................vi

JURISDICTIONAL STATEMENT .......................................................1

STATEMENT OF THE ISSUES...........................................................2

INTRODUCTION ................................................................................3

STATEMENT OF THE CASE...............................................................4

STANDARD OF REVIEW ...................................................................19

SUMMARY OF THE ARGUMENTS ..................................................22

ARGUMENT ......................................................................................22

    I.    THE DISTRICT COURT ERRED IN ITS INTERPRETATION OF THE POLICY AND SPECIFICALLY ITS INTERPRETATION OF THE SPECIFIC ENTITY EXCLUSION ..............................................................22

        A.    The Specific Entity Exclusion Does Not Clearly and Unambiguously Preclude Coverage.........................................22

            1.    The Policy provides broad coverage for wrongful acts taken by Ultimate Escapes and its Executives .......22

            2.    The Specific Entity Exclusion only precludes coverage for losses caused by wrongful acts taken on behalf of Private Escapes; it does not bar coverage for losses caused by wrongful acts taken on behalf of Ultimate Escapes .......................................23

            3.    There were material issues of fact as to the capacity in which Keith was acting when he engaged in the wrongful acts during the negotiation of the 2010 Settlement Agreement .............25

            4.    The exception to the Specific Entity Exclusion renders the Exclusion inapplicable ...............................30

# TABLE OF CONTENTS
(continued)

**Page**

B.  The Specific Entity Exclusion Is, At the Very Least, Ambiguous and Parole Evidence Creates Issues of Fact Precluding Summary Judgment ...............................................31

1.  National Union covered a nearly identical claim under the Policy ............................................................32

2.  It was reasonable for Ultimate Escapes to expect that its executives' wrongful acts would be covered under the Policy if they were acting in their capacities as Ultimate Escapes' executives ..........32

3.  National Union's broad interpretation of the Specific Entity Exclusion should be rejected because it would lead to an absurd result .....................33

II.  BECAUSE THE LOWER COURT GRANTED SUMMARY JUDGMENT ON P&S' COMMON LAW AND STATUTORY BAD FAITH CLAIMS SOLELY ON THE BASIS OF ITS INCORRECT CONCLUSION REGARDING COVERAGE, THE SUMMARY JUDGMENT ON THE BAD FAITH CLAIMS SHOULD BE REVERSED ................................................34

CONCLUSION ...................................................................................36

STATEMENT OF COUNSEL AS TO ORAL ARGUMENT ...............................36

CERTIFICATE OF COMPLIANCE ....................................................................38

CERTIFICATE OF DIGITAL SUBMISSION AND  PRIVACY REDACTIONS ...........................................................................39

# TABLE OF AUTHORITIES

## CASES

*Am. Family Mut. Ins. Co. v. Johnson*,
  816 P.2d 952 (Colo. 1991)......................................................................21

*Am. Family Mut. Ins. Co. v. Zurich Am. Ins. Co.*,
  2013 WL 3851216 (D. Colo. 2013)...................................................27

*Atmel Corp. v. Vitesse Semiconductor Corp.*,
  30 P.3d 789 (Colo. App. 2001), *overruled on other grounds by*
  *Ingold v. AIMCO/Bluffs, LLC Apartments*, 159 P.3d 116 (Colo.
  2007) ....................................................................................................34

*Blackhawk-Central City Sanitation Dist. v. American Guarantee and*
  *Liability Ins. Co.*,
  214 F.3d 1183 (10th Cir. 2000) ........................................................19

*Cont'l Cas. Co. v. Adams*,
  2003 WL 22162379, No. 3:CV02-1122 (M.D.Pa. Sept. 12, 2003)...................24

*Cont'l W. Ins. Co. v. Shay Const., Inc.*,
  805 F.Supp.2d 1125 (D. Colo. 2011)...................................................32

*Cotter Corp. v. Am. Empire Surplus Lines Ins. Co.*,
  90 P.3d 814 (Colo. 2004)....................................................................20

*Cyprus Amax Minerals Co. v. Lexington Ins. Co.*,
  74 P.3d 294 (Colo. 2003).....................................................20, 21, 26

*Diamond State Ins. Co. v. Utica Fist Ins. Co.*,
  37 A.D. 3d 160, 829 N.Y.2d 465 (NY Sup. App. 2007) ....................36

*Dupre v. Allstate Ins. Co.*,
  62 P.3d 1024 (Colo. App. 2002)........................................................33

*Employers' Fire Ins. Co. v. W. Guar. Fund Services*,
  924 P.2d 1107 (Colo. App. 1996)......................................................26

*Engineered Data Prods., Inc. v. Nova Office Furniture, Inc.*,
  849 F.Supp. 1412 (D. Colo. 1994).....................................................34

*Ferndale Dev. Co., Inc. v. Great Am. Ins. Co.*,
    527 P.2d 939 (Colo. 1974)................................................................21

*Fire Ins. Exchange v. Sullivan*,
    224 P.3d 348 (Colo. App. 2009)........................................................20

*Foodtown v. National Union Fire Ins. Co. of Pittsburgh*,
    412 Fed.Appx. 502 (3rd Cir. 2011) ...................................................29

*Hoang v. Assur. Co.*,
    149 P.3d 798 (Colo. 2007).................................................................21

*I.D.G., Inc. v. St. Paul Fire & Marine Ins. Co.*,
    No. 99-5067, 2000 WL 135171 (10th Cir. Feb. 7, 2000)...................19

*Mid Century Ins. Co. v. Gates Rubber Co.*,
    43 P.3d 737 (Colo. App. 2002)..........................................................34

*Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*,
    135 F.R.D. 101 (D.N.J. 1990)......................................................21, 32

*Progressive Specialty Ins. Co. v. Hartford Underwriters Ins. Co.*,
    148 P.3d 470 (Colo. 2006).................................................................20

*Prudential Prop. & Cas. Co. v. LaRose*,
    919 P.2d 915 (Colo. App. 1996)........................................................21

*Travelers Indem. Co. v. Howard Elec. Co.*,
    879 P.2d 431 (Colo. App. 1994)........................................................21

*Yocum v. St. Paul Mercury Ins. Co.*,
    2010 WL 2179137, No. 5:09-CV-00123-WRW (E.D.Ark. May 27,
    2010) ..................................................................................................24

## STATUTES

C.R.S. §§ 10-3-1115 and 1116................................................................36

## OTHER AUTHORITIES

Fed.R.Civ.P. 56(c)...................................................................................19

## STATEMENT OF RELATED CASES (10th Cir. 28.2(C)(1)

There are no prior or related appeals.

128134323.2

## JURISDICTIONAL STATEMENT

The District Court had subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiff, P&S, LLC ("P&S") and Defendant National Union Fire Insurance Company of Pittsburgh, PA ("National Union") and the amount in controversy exceeds $75,000.  Defendant National Union is incorporated in Pennsylvania with its principal place of business in New York.  P&S, in turn, is a citizen of Colorado, as its members, Patrick Meyers and the PEM Children's Trust, are both citizens of Colorado.  *See* Docket #1, National Union's Notice of Removal.

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, as P&S appeals from a final decision from the District Court.  On July 24, 2015 the District Court entered summary judgment in full and entered judgment against P&S on all of P&S' claims.  P&S filed its Notice of Appeal on August 27, 2015.

128134323.2

# STATEMENT OF THE ISSUES

I.      Did the District Court err in determining that the insurance policy, and particularly the "specific entity exclusion," was unambiguous and applied to bar coverage?

II.     Did the District Court err in interpreting the exclusion broadly and not in conjunction with the policy's broad grant of coverage?

III.    Did the District Court err in not accepting or considering evidence of the insured's reasonable interpretation and parole evidence, including National Union's prior positions in virtually identical circumstances?

IV.     Did the District Court err in not considering whether there were disputed issues of material fact regarding the capacity in which Richard Keith was acting with respect to the allegations of Wrongful Acts (as defined in the policy), including not considering facts and circumstances beyond the pleadings in the underlying case?

VI.     Did the District Court err in granting summary judgment on P&S' common law and statutory bad faith claims?

## INTRODUCTION

National Union provided insurance to executives of Ultimate Escapes, Inc. pursuant to the policy at issue in this case.  Under that policy, it owed coverage to Richard Keith ("Keith") with respect to claims brought against him for wrongful acts while acting as an officer of Ultimate Escapes.  It wrongly denied Keith's claim for coverage.

Keith made misrepresentations and omissions regarding Ultimate Escape's financial position to P&S.  P&S relied on those misrepresentations and omissions in agreeing to a settlement with Ultimate Escapes that involved structured payment over time.  Because Ultimate Escapes immediately defaulted and then filed for Bankruptcy within weeks of signing the settlement agreement, P&S brought an action against, among others, Keith.  Keith sought coverage under the policy, but National Union after over seven (7) months of delay and virtually no investigation, denied coverage.

National Union employed an incorrect and overly expansive interpretation of an exclusion in the policy, which was inconsistent with the reasonable interpretation of Keith and inconsistent with its interpretation of the same exclusion when it agreed to coverage of a virtually identical claim against Keith brought by another former Private Escapes member.  To settle with P&S, Keith agreed to assign his claim for coverage to P&S.

3

P&S as assignee brought this case.  The District Court erred by granting summary judgment to National Union.  The District Court incorrectly found that the policy, and specifically the exclusion, was unambiguous and then employed an overly broad interpretation of the exclusion.  The District Court refused to accept the reasonable interpretation presented by P&S and refused to consider parole evidence, including that National Union had interpreted the exclusion the same as P&S proposed when it agreed to cover another virtually identical claim.  And the District Court erred in not considering the capacity in which Keith was acting when he committed the wrongful acts at issue or that there were material issues of fact in that regard.  Indeed, the record shows issues of material fact as to the capacity in which Keith was acting when he made the misrepresentations and omissions at issue, precluding summary judgment under the correct interpretation.

## STATEMENT OF THE CASE

National Union sold Executive and Organization Liability Insurance Policy No. 01-317-72-99 (the "Policy") to Ultimate Escapes, Inc., (App-0405-0489) pursuant to which it agreed to pay "the Loss of any Insured Person arising from a Claim made against such Insured Person for any Wrongful Act of such Insured

128134323.2

Person." (*Id.* at App-0412). (*See also*, App-0343-0344 [Fisher Dep. (Fed. R. Civ.

P. 30(b)(6) designee) 17:12-18:17][1]).

The Policy contains the following definitions:

- "Loss" is defined to include damages, settlements, and judgments. (App-0415).

- "Insured Person" is defined as an Executive of an organization. An Executive, in turn, is defined as "any past, present and future duly elected or appointed director [or] officer" of Ultimate Escapes or "any past, present and future General Counsel" of Ultimate Escapes. (App-0415).

- "Claim" is defined to include a written demand for monetary relief, as well as a civil proceeding for monetary relief. (App-0413).

- "Wrongful Act" is defined as "any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, [or] omission." (App-0416).

The facts in the record demonstrate that the claim for coverage submitted by

Keith squarely meets these definitions.

---

[1] Citations to the Appendix are referenced by (App-page #) throughout this brief. Where deposition transcripts are cited, the transcript page and line pin citations are in square brackets following the corresponding Appendix ("App-") page citations. For ease of reference, we sometimes also provide the deponent's name.

Ultimate Escapes was formed through a corporate combination of two luxury destination clubs, Ultimate Resorts and Private Escapes.  Plaintiff below, P&S, was a member of Private Escapes.  Shortly after the transaction, Ultimate Escapes informed P&S that P&S had become a member of Ultimate Escapes and that Ultimate Escapes would not honor the terms of the Private Escapes Membership Agreement ("Membership Agreement").  Instead Keith, as Co-Chief Executive Officer of Ultimate Escapes, told P&S that P&S had to sign a new agreement with Ultimate Escapes in order to continue its membership.  (App-0271-0273 [Meyers I Dep. 22:23-24:13]; App-0275-0276 [30:4-31:17]; App-0315 [Meyers II Dep. 116:4-117:23], App-0329).

None of the new membership agreement options, however, allowed P&S to keep the Membership Agreement's terms and conditions that had been promised to be "grandfathered" and the new options all contained material changes, such as no unlimited usage and no set annual dues.  *Id.*

P&S did not agree to the membership options offered by Ultimate Escapes, made efforts to resign and obtain its money back or damages, and engaged in negotiations with Ultimate Escapes over its claim, first primarily with Keith and then with Jeffrey Sparks, who was Ultimate Escapes' general counsel. Specifically, from and after January 2009 through the Spring of 2010, Meyers negotiated for resolution of his claims with Ultimate Escapes, including with Keith

6

as Co-Chief Executive Officer of Ultimate Escapes and with Ultimate Escapes'

General Counsel.  (App-0275 [Meyers I Dep. 30:4-10], App-0276 [31:2-17]; App-

0277-0279 [39:2-41:23]; App-0280-0281 [46:23-47:3]; App-0282 [57:22-25];

App-0283-0285 [58:12-60:19]; App-0286 [61:13-23]; App-0290 [67:17-20]; App-

0301 [94:21-25]; App-0490-0538).  P&S was told and understood that it was

dealing with Ultimate Escapes, that Private Escapes was at most a "shell" and that

Keith was acting in his capacity as co-CEO of Ultimate Escapes in these

negotiations.  (App-0275 [Meyers I Dep. 30:4-10]; App-0276 [31:2-17]; App-

0277-0279 [39:2-41:23]; App-0280-0281 [46:23-47:3]; App-0282 [57:22-25];

App-0283-0285 [58:12-60:19]; App-0286 [61:13-23]; App-0290 [67:17-20]; App-

0301 [94:21-25]; App-0490-0538).  The signature block on Keith's (and other's)

communications to P&S during this time period indicated he was Co-CEO of

Ultimate Escapes.  (App-0337, 0541-0542, 0544-0547, 0549-0562).

 After further negotiations with Ultimate Escapes, on July 23, 2010, P&S,

Ultimate Escapes and Private Escapes entered into a Settlement Agreement and

Release (collectively "Settlement Agreement").  (App-0287-0289 [Meyers I Dep.

62:6-64:2]; App-0517-0536).

 In part, the Settlement Agreement provided that Ultimate Escapes and

Private Escapes were jointly obligated to pay P&S $135,000.00.  The Settlement

Agreement further provided that this payment could be made in $7,500.00

installments with the first installment to be made on August 1, 2010, and all

subsequent installments to be made on the first business day of each month, until

paid in full.  (App-0517-0536).

In negotiations leading up to the signing of the Settlement Agreement,

Ultimate Escapes' general counsel, who reported to Keith, told P&S that it was in

the process of obtaining new financing.  Keith and the general counsel omitted and

failed to disclose that Ultimate Escapes and related entities were on the verge of an

imminent bankruptcy filing and would not be able to honor the obligations of the

Settlement Agreement.  Had that material information been disclosed to Meyers,

he and P&S would not have agreed to the settlement.  (App-0297-0300 [Meyers I

Dep. 87:6-90:22]; App-0567-0576).

On August 1, 2010, Ultimate Escapes failed to make the first required

payment of $7,500.00 and then failed to make all subsequent payments thereafter.

(App-0292 [Meyers I Dep. 72:14-22]).

In September 2010, just before the bankruptcy described below, P&S

initiated an action against Ultimate Escapes and Private Escapes for breach of

contract in the District Court for the City and County of Denver, Colorado.  (App-

0291 [Meyers 1 Dep. 71:20-25]; App-0577-0580).

Another former Private Escapes member who similarly did not agree to

Ultimate Escapes' proposed options, Peter Jupp, also filed a Complaint in

September, 2010 in the United States District Court for the District of Colorado,

Case No. 10-cv-02290-DME-MEH against, among others, Ultimate Escapes,

Private Escapes, and Richard Keith as an officer of both Private Escapes and

Ultimate Escapes.  (App-0588 [Samantha Sadoff ("Sadoff") Dep. 59:6-23]; App-

0820-0838 (under restricted access per Stipulated Protective Order)).  In that

complaint, Jupp alleged, among other things, that Keith was the CEO of Private

Escapes and "co-CEO of Ultimate Escapes," that after the merger he was offered

only membership options in Ultimate Escapes that were not as good terms as he

had had with Private Escapes, and that Keith made misrepresentations to him in

this regard.  (App-0826-0832).

On September 20, 2010, Ultimate Escapes and numerous related entities

filed for Chapter 11 bankruptcy protection in the Bankruptcy Court for the District

of Delaware.

This stayed the P&S lawsuit, which was administratively closed, (App-0293

[Meyers I Dep. 75:1-19]), and stayed Jupp's claims against Ultimate Escapes,

while Jupp's claims against the other defendants went forward.

Keith submitted the Jupp case to the Ultimate Escapes insurance carrier,

National Union, under the Policy, as well as to the Private Escapes insurance

carrier, CNA, under a policy CNA had issued to Private Escapes covering it and its

9

executives under certain terms and conditions.  (App-0612-0613 [Sadoff Dep.

129:2-130:6]; App-0621-0624 [144:2-147:24]).

Both CNA and National Union provided coverage to Keith with respect to

the Jupp claims.  *Id.*  National Union assigned Samantha Sadoff as the adjuster on

the Jupp claim.  Sadoff, with the approval of her supervisor, Zachary Fisher, issued

a reservation of rights letter setting forth National Union's coverage position.

(App-0587 [Sadoff Dep. 57:3-7]; App-0589 [76:2-22]; App-0590-592 [79:12-14;

77:20-78:25]; App-0839-0841 (under restricted access per Stipulated Protective

Order)).  (App-0360-0363 [Fisher Dep. (Fed. R. Civ. P 30(b)(6) designee) 109:17-

112:15]).

Sadoff analyzed Keith's claim for coverage of the Jupp claim under the

Policy and concluded that if Keith was acting in his capacity as an executive of

Ultimate Escapes when he committed the alleged Wrongful Acts (as defined in the

Policy) (of making misrepresentations in an effort to convince Private Escapes

members to sign new contracts with Ultimate Escapes), the claim would be

covered.  (App-0593 [Sadoff Dep. 91:7-20]; App-0594-0598 [97:16-101:4]; App-

0599-0608 [102:4-111:8]; App-0842-0848 (reservation of rights letter, under

restricted access per Stipulated Protective Order, stating at App-0843, "our initial

opinion is that limited coverage is afforded to Richard Keith as co-CEO at

Ultimate Escapes, Inc.")).  She came to this conclusion notwithstanding the fact

10

128134323.2

that Jupp had alleged that Keith was both an executive of Private Escapes and Ultimate Escapes and had brought his claims against both entities.

She undertook efforts to ascertain the capacity in which Keith was acting by investigating beyond the four corners of the Jupp Complaint. (App-0600-601 [103:14-104:1]; App-0609-0611 [118:16-120:8]; App-0614-0615 [132:25-133:1]; App-0616-0617 [134:17-135:6]; App-0619-0620 [142:18-143:2]). National Union recognized that the allegations related to conduct by Keith in his capacity as an executive of Ultimate Escapes were sufficient to warrant coverage or at least not to deny coverage of the claim even though he was an executive of both Private Escapes and Ultimate Escapes. (*Id.* App-0597-0598 [100:25-101:4]; App-0600-0601 [103:14-104:7]; App-0602-0603 [105:8-106:16]; App-0608 [111:9-23]).

P&S filed a new complaint against Keith and Private Escapes in the District Court for the City and County of Denver, Colorado in May 2011. P&S did not name Ultimate Escapes as a defendant because of the bankruptcy proceeding. (App-0294 [Meyers I Dep. 82:1-19]; App-0295-0296 [84:15-85:6]; App-0567-0576).

In the complaint, P&S advanced claims related to two different wrongs--the first when it made the decision to sign up with Private Escapes and the second when it agreed to settle with Ultimate Escapes. The first pertained to Keith's misrepresentations inducing P&S to sign the initial Membership Agreement with

11

Private Escapes by telling P&S that it would be "grandfathered" with respect to certain rights and benefits after the so-called merger. The second related to P&S' separate claims that Keith, during the time he was Co-Chief Executive Officer of Ultimate Escapes, misrepresented and omitted disclosure of Ultimate Escapes' financial and business condition and made misleading statements and omissions that Ultimate Escapes would be able to honor its obligations under the Settlement Agreement. Specifically, in strikingly similar allegations and claims as Jupp had advanced, P&S alleged:

> 15. Upon information and belief, some of Private Escapes' former employees worked for the newly formed Ultimate Escapes, including Richard Keith. Further, Keith was the co-Chief Executive Officer of Ultimate Escapes.
>
> (App-0569).

* * *

> 24. On July 23, 2010, P&S, Private Escapes, and Ultimate Escapes Holdings LLC entered into a Settlement Agreement and Release (the "Settlement Agreement").
>
> (App-0570).

* * *

> 26. In the negotiations leading up to the signing of the Settlement Agreement, Ultimate Escapes' general counsel specifically stated that the company was in the process of obtaining new financing; but no one disclosed the material fact that Ultimate Escapes and related entities were on the verge of imminent bankruptcy filing.
>
> (App-0570).

* * *

12

Third Cause of Action

53.    The Defendants misrepresented, concealed or failed to disclose the material information regarding the financial condition and business condition and that they were likely not going to be able to honor their obligations under the Settlement Agreement at the time they entered into it, which facts should have been accurately stated and fully disclosed by the Defendants.

(App-0573).

* * *

60.    The Defendants were negligent in obtaining or communicating the false information and the omissions.

(App-0573).

* * *

Fourth Cause of Action

72.    In the course of their luxury destination club business, the Defendants engaged in deceptive trade practices by knowingly making false representations relating to the so-called merger between Private Escapes and Ultimate Resort and with respect to the services it was offering and the benefits to members who signed Private Escapes' membership agreements before the so-called merger occurred in violation of C.R.S.A. § 6-1-105(I)(e) in an attempt to entice potential members to sign membership agreements.

73.    In addition, the Defendants engaged in deceptive trade practices by utilizing bait-and-switch advertising, accompanied by an effort to sell new contracts with Ultimate Escapes on terms other than those advertised to members under the guise of a merger, in violation of C.R.S.A. § 6-1-105(n) and (N)(III).

74.    In addition, the Defendants engaged in deceptive trade practices by utilizing tie-in sales or other undisclosed conditions to be met prior to honoring the contract with members such as P&S, in violation of C.R.S.A. § 6-1-105(n) and (N)(III).

(App-0574).

13

(App-0356 [Fisher Dep. (Fed. R. Civ. P. 30(b)(6) designee) 97:12-25]; App-0637-0682).

As he did with the Jupp claim, which was pending when P&S filed the above claim, Keith provided notice under the Policy for coverage of the P&S claim to Private Escapes' D&O insurance carrier, CNA, and to Ultimate Escapes' D&O insurance carrier, National Union. (App-0625-0627 [Sadoff Dep. 149:14-151:6]; (App-0349-0352 [Fisher Dep. (Fed. R. Civ. P. 30(b)(6) designee) 84:11-87:17]; App-0683-0704).

Sadoff was assigned to review and provide the coverage decision for National Union. (App-0625-0627 [Sadoff Dep. 149:14-151:6]; App-0353-0355 [Fisher Dep. (Fed. R. Civ. P. 30(b)(6) designee) 93:23-95:17]).

During the time Sadoff was reviewing coverage, she also was handling settlement efforts between the parties in the Jupp matter. She, with the approval of her direct report, Zachary Fisher, approved that National Union provide coverage and pay into the settlement together with CNA, which they did to settle the claim with Jupp. (App-0627-0628 [Sadoff Dep. 151:10-152:7]; App-0629 [156:6-10]; App-0630 [164:20-25]; App-0631-0632 [168:1-169:1]). As Sadoff conceded in her deposition, it was her position that coverage was available under Policy to the extent Keith was acting in his capacity as an executive of Ultimate Escapes and that Nation Union concluded that he was so acting with respect to at least some of

14

the claims: "Q: Is it fair to say given the way this claim proceeded in which National Union paid money to settle the case, that you concluded he had been sued in his capacity as an executive of Ultimate Escapes? A: Yes." (App-0597-0598 [100:25-101:4]) (*See also* App-0600-06-1 [103:14-104:1]).

Before Sadoff made her decision on Keith's claim for coverage of the P&S claims, she was promoted and the file transferred to another claims adjuster with National Union, Veronica Barkley ("Barkley"). (App-0633 [Sadoff Dep. 200:7-25]; App-0364-0366 [Fisher Dep. (Fed. R. Civ. P. 30(b)(6) designee) 113:3-115:9]). This contributed to an unreasonable delay in making and communicating the coverage decision.

Barkley received the claim file on November 1, 2011 and provided a draft coverage letter to the same supervisor, Fisher, in November 2011. (App-0709 [Barkley Dep. 47:10-16]; App-0710 [63:6-20]). In January, Barkley went on leave and the coverage decision had still not been rendered. (App-0381 [Fisher Dep. (Fed. R. Civ. P. 30(b)(6) designee) 151:24-10]).

Counsel for Keith made repeated requests to Sadoff, Barkley, and Fisher for National Union to render its coverage decision so Keith would have that information in connection with defense and settlement efforts of P&S' claim. For example, counsel for Keith emailed the following times with various promises from National Union that its coverage position would be provided shortly:

15

128134323.2

- June 7, 2011 (App-0637-0682)
- June 22, 2011 (App-0711-0713)
- November 1, 2011 (App-0714-0723)
- November 14, 2011 (App-0724-0728)
- December 7, 2011 (App-0724-0728)
- January 26, 2012 (App-0724-0728)
- February 8, 2012 (App-0729-0734)

(App-0356 [Fisher Dep. (Fed. R. Civ. P. 30(b)(6) designee) 97:12-25]; (App-0357-0358 [106:6-107:22]; App-0366-0369 [115:10-118:12]; App-0370-0372 [125:2-127:3]; App-0374-0378 [141:25-145:16]; App-0379-0378 [147:16-148:10]; App-0382-0384 [154:17-156:3]).

In response to the latest requests and demands from Keith's counsel, Fisher re-assigned the file to another adjuster, Heather Hardy ("Hardy"). (App-0398-0400 [Fisher Dep. (Fed. R. Civ. P. 30(b)(6) designee) 186:2-188:11]).

However, Fisher reviewed the file and prepared the denial of coverage letter himself on the same day, then emailed the letter to Hardy, asked her to put the letter on her letterhead and sign and return the letter to him so he could issue it. (App-0387-0389 [Fisher Dep. (Fed. R. Civ. P. 30(b)(6) designee) 163:17-165:1]; App-0398-0401 [186:11-189:2]).

Fisher conducted no review or investigation other than to review the file and the complaint on that same day and made his decision of no coverage based only on his reading of the complaint. (App-0390-0391 [Fisher Dep. (Fed. R. Civ. P. 30(b)(6) designee) 167:21-168:5]; App-0397-0398 [185:24-186:1]). He made no

16

other investigation to determine the capacity in which Keith was acting with respect to the claims concerning the 2010 Settlement Agreement. (App-0390-0392 [Fisher Dep. (Fed. R. Civ. P. 30(b)(6) designee) 167:21-169:2]).

Hardy had the file and the draft letter for only 14 minutes while she reviewed and signed the letter. (App-0401-0404 [Fisher Dep. (Fed. R. Civ. P. 30(b)(6) designee) 189:11-192:4]; App-0739-0743 [Hardy Dep. 45:17-49:2]). Nonetheless, in written discovery in this case, National Union misrepresented that Hardy had solely been responsible for National Union's coverage decision. (App-0347-0348 [Fisher Dep. (Fed. R. Civ. P. 30(b)(6) designee) 71:17-72:14]; App-0744-0754, at 0750).

National Union fully denied Keith's claim for coverage. In its February 9, 2012 denial letter, National Union focused solely on Keith's conduct as an officer of Private Escapes when P&S made its initial decision to join Private Escapes and ignored entirely his position and alleged wrongful conduct as an executive of Ultimate Escapes at the time of the 2010 Settlement Agreement and Wrongful Acts (as defined in the Policy) inducing P&S to settle. (App-0385-0388 [Fisher Dep. (Fed. R. Civ. P. 30(b)(6) designee) 161:11-164:11]). National Union based its no coverage decision on an exclusion in the Policy -- Exclusion 34. That exclusion provides:

> In consideration of the premium charged, it is hereby understood and agreed that the **Insurer** shall not be liable for any **Loss** in connection

17

with any **Claim** made against or brought by or on behalf of any entity(ies) listed below and/or any **Executive** or **Employee** thereof; or by any security holder of the **Organization** whether directly or derivatively, unless such **Claim** is instigated and continued totally independent of, or without the intervention of such entity(ies) and/or any **Executive** or **Employee** thereof:

1.      Private Escapes Holdings, LLC (including any subsidiary or affiliate thereof)
2.      Ultimate Resort Holdings, LLC (including any subsidiary or affiliate thereof)

(APP-0471) (hereafter "Exclusion").

National Union employed an expansive interpretation of a "Loss in connection" with a claim brought against Private Escapes--essentially taking the position that to the extent a claim against Private Escape was brought in the same action as a separate covered claim, it was permitted to exclude coverage for the covered claim.  The District Court adopted this interpretation.  (App-0812).

In discovery, National Union admitted that its proposed interpretation of Exclusion 34 with respect to this denial of Keith's claim for coverage of the P&S claim would have barred coverage of the Jupp claim if it had utilized the same interpretation.  (App-0393-0396 [Fisher Dep. (Fed. R. Civ. P. 30(b)(6) designee) 174:6-177:5]).

National Union's policy for the time within which it is to issue its coverage position is within 30 days and no more than 60 days after receipt of the notice of claim for coverage.  (App-0345 [Fisher Dep. (Fed. R. Civ. P. 30(b)(6) designee) 51:7-15]).  This is consistent with industry standard.  (App-0346 [*Id.* 58:11-24]).

Contrary to its own policy, National Union took over 6 months to render its coverage position. (Compare App-0683, 0698-0699, and 0068).

On February 13, 2013, Keith and Private Escapes entered into a confidential settlement agreement with P&S. The settlement provided, among other things, that Keith stipulated to a judgment in P&S' favor and against Keith, that P&S would not collect the judgment from Keith, and that Keith assigned his rights and claims to coverage under the National Union Policy to P&S. (App-0302 [Meyers I Dep. 98:11-18]; App-0303-0304 [102:19-103:8]).

## STANDARD OF REVIEW

The standard of review in evaluating a District Court's grant of summary judgment is *de novo*; this Court applies the same legal standards used by the District Court. *Blackhawk-Central City Sanitation Dist. v. American Guarantee and Liability Ins. Co.*, 214 F.3d 1183, 1188 (10th Cir. 2000). Summary judgment should not be granted unless the evidence, viewed in the light most favorable to the party opposing the motion, shows there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See id.*; Fed.R.Civ.P. 56(c). Furthermore, the proper interpretation and construction of an insurance policy is a matter of law, and therefore this Court reviews the Policy at issue *de novo* in order to determine whether it provides coverage. *Id. See also I.D.G., Inc. v. St. Paul Fire & Marine Ins. Co.*, No. 99-5067, 2000 WL 135171, at *3 (10th Cir.

Feb. 7, 2000). Thus, if based on its own independent review of the policy at issue, this Court determines it is ambiguous or the record below established there were genuine issues of disputed fact under the correct interpretation of the policy, reversal is required.

When construing terms of an insurance policy, Colorado[2] courts apply principles of contract interpretation. *Fire Ins. Exchange v. Sullivan*, 224 P.3d 348, 351 (Colo. App. 2009). As with contracts, when interpreting a policy, courts should attempt to carry out the intent and reasonable expectations of the parties at the time the policy was drafted. *Cotter Corp. v. Am. Empire Surplus Lines Ins. Co.*, 90 P.3d 814, 819 (Colo. 2004). Courts should read the policy provisions as a whole, rather than in isolation. *Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo. 2003). Accordingly, courts construe a policy so that all provisions are harmonious and none is rendered meaningless. *Progressive Specialty Ins. Co. v. Hartford Underwriters Ins. Co.*, 148 P.3d 470, 474 (Colo. 2006).

The plain language of a policy controls unless it is ambiguous. *Sullivan*, 224 P.3d at 351. A policy is ambiguous when it is susceptible of more than one

---

[2] The policy does not contain a choice of law provision, although it does provide that a mediator in the required pre-complaint mediation apply the law of Delaware. As it relates to the interpretation of an insurance contract, there is no material substantive difference, thus, application of either the law of Colorado or Delaware yield the same result with respect to the issues raised in this appeal.

reasonable interpretation. *Hoang v. Assur. Co.*, 149 P.3d 798, 801 (Colo. 2007). Ambiguity also arises when an insurer affords inconsistent interpretations of identical policy language. *Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 106-107 (D.N.J. 1990); 9A Couch on Ins. § 138:43 (2014). Finally, insurance policies are to be liberally construed in favor of coverage and any ambiguities are to be interpreted in favor of providing coverage to the insured. *Cyprus Amax Minerals Co.*, 74 P.3d at 299.

The insured has the burden to show that a claim is covered by the policy. Once met, the burden shifts to the insurer to show that a covered claim falls solely and entirely within a policy exclusion. *Prudential Prop. & Cas. Co. v. LaRose*, 919 P.2d 915, 917 (Colo. App. 1996). For an exclusion to apply it must be drafted in clear and specific language and not be subject to any other reasonable interpretation. *Am. Family Mut. Ins. Co. v. Johnson*, 816 P.2d 952, 954 (Colo. 1991). Exclusions must be read narrowly and in conjunction with the policy's broad grant of coverage. *Ferndale Dev. Co., Inc. v. Great Am. Ins. Co.*, 527 P.2d 939, 940 (Colo. 1974). When ambiguities in an exclusion exist they must be construed in favor of coverage, *Cyprus Amax Minerals Co.*, 74 P.3d at 299, and the court must consider extrinsic evidence to determine the mutual intent of the parties at the time of contracting, *Travelers Indem. Co. v. Howard Elec. Co.*, 879 P.2d 431, 434-35 (Colo. App. 1994).

## SUMMARY OF THE ARGUMENTS

The District Court erred in its interpretation of the policy and in particular the specific entity exclusion. That exclusion should be read narrowly and consistent with the purpose and expectation of the parties concerning the coverage Ultimate Escapes purchased. When done so, it is ambiguous at best. The exclusion does not clearly and unambiguously preclude coverage, as is required to enforce it. P&S has offered a plausible interpretation pursuant to which coverage is available to the extent Keith was acting in his capacity as an executive of Ultimate Escapes when he committed the Wrongful Acts (as defined in the Policy) at issue and there are at least disputed issues of fact in that regard, precluding summary judgment. Indeed, National Union interpreted the exclusion the same way as P&S proposes in a virtually identical case. Further, because the District Court granted summary judgment on P&S' bad faith claims solely on the basis that the exclusion applied, the summary judgment on those claims must likewise be reversed.

## ARGUMENT

## I.    THE DISTRICT COURT ERRED IN ITS INTERPRETATION OF THE POLICY AND SPECIFICALLY ITS INTERPRETATION OF THE SPECIFIC ENTITY EXCLUSION

### A.    The Specific Entity Exclusion Does Not Clearly and Unambiguously Preclude Coverage.

#### 1.    The Policy provides broad coverage for wrongful acts taken by Ultimate Escapes and its Executives.

22

The Policy provides broad coverage for any loss arising from the wrongful acts of an Ultimate Escapes' executive, when the executive is acting in his or her capacity as an executive of Ultimate Escapes.  (*See* Policy at App-0412-0416). Keith was an executive of Ultimate Escapes.  Keith committed wrongful acts on behalf of Ultimate Escapes when he made misrepresentations and misleading statements and/or omissions to P&S regarding Ultimate Escapes' financial situation and ability to pay P&S leading up to the signing of the July 23, 2010 Settlement Agreement.  Keith's wrongful acts are covered under the Policy. National Union does not dispute this and did not raise any argument or present facts to suggest otherwise in the proceedings below.  The District Court did not find otherwise.  Rather it relied solely on the Specific Entity Exclusion to preclude coverage.

      **2.**      **The Specific Entity Exclusion only precludes coverage for losses caused by wrongful acts taken on behalf of Private Escapes; it does not bar coverage for losses caused by wrongful acts taken on behalf of Ultimate Escapes.**

The Specific Entity Exclusion precludes coverage for a small subset of losses that are "in connection" with a claim made against Private Escapes or its executives, unless the claim is instigated and continued independent of Private Escapes and its executives.  In other words, the Policy does not provide coverage when a Private Escapes' executive commits a wrongful act in his or her capacity as an executive of Private Escapes.  For example, the Policy would not cover Keith's

misrepresentations to P&S regarding the 2007 Membership Agreement because Keith made these misrepresentations on behalf of Private Escapes while acting in his capacity as an executive of Private Escapes.

The Exclusion, however, does not clearly and unambiguously preclude coverage when an Ultimate Escapes' executive commits a wrongful act while acting in his or her capacity as an executive of Ultimate Escapes simply because he or she may also be or previously have been an executive of Private Escapes. As such, the Policy provides coverage for Keith's misrepresentations to P&S inducing it to enter into the 2010 Settlement Agreement because Keith made these misrepresentations on behalf of Ultimate Escapes while acting in his capacity as an executive of Ultimate Escapes—or there are at least disputed questions of fact on this issue, thereby, precluding summary judgment. *See Yocum v. St. Paul Mercury Ins. Co.*, 2010 WL 2179137, No. 5:09-CV-00123-WRW (E.D.Ark. May 27, 2010) (indicating that insurer's duty to defend would have been triggered had officer's actions on behalf of the insured not been "inextricably intertwined" with his actions on behalf of the excluded entity); *Cont'l Cas. Co. v. Adams*, 2003 WL 22162379, at *2-10, No. 3:CV02-1122 (M.D.Pa. Sept. 12, 2003) (noting that had the complaint distinguished between actions taken on behalf of the insured corporation and actions taken on behalf of the non-insured corporation, there would have been a duty to defend based on the complaint). Both cases support that

24

to the extent Keith was acting solely in his capacity as an executive of Ultimate

Escapes, the exclusion does not apply.

> **3.    There were material issues of fact as to the capacity in which Keith was acting when he engaged in the wrongful acts during the negotiation of the 2010 Settlement Agreement.**

There are disputed issues of fact as to the capacity in which Keith was acting

when he and Ultimate Escapes' general counsel were negotiating the 2010

Settlement Agreement with P&S.  Indeed, as described above, there are significant

facts from which a reasonable jury could conclude that Keith was acting solely in

his capacity as an executive of Ultimate Escapes when he failed to disclose the

material fact that Ultimate Escapes was on the verge of bankruptcy and would not

be able to fulfill the payment obligations of the 2010 Settlement Agreement.

(App-0518-0536, 0538).

For example, P&S only negotiated with executives of Ultimate Escapes

regarding the claims--first with Keith and then with Jeffrey Sparks, who was

Ultimate Escapes' general counsel.  (App-0275 [Meyers I Dep. 30:4-10], 0276

[31:2-17]; App-0277-0279 [39:2-41:23]; App-0280-0281 [46:23-47:3]; App-0282

[57:22-25]; App-0283-0285 [58:12-60:19]; App-0286 [61:13-23]; App-0290

[67:17-20]; App-0301 [94:21-25]; App-0490-0538).  P&S was told and understood

that it was dealing with Ultimate Escapes, that Private Escapes was at most a

"shell" and that Keith was acting in his capacity as co-CEO of Ultimate Escapes in

128134323.2

these negotiations.  (App-0275 [Meyers I Dep. 30:4-10]; App-0276 [31:2-17];

App-0277-0279 [39:2-41:23]; App-0280-0281 [46:23-47:3]; App-0282 [57:22-25];

App-0283-0285 [58:12-60:19];  App-0286 [61:13-23];  App-0290 [67:17-20];

App-0301 [94:21-25]; App-0490-0538).  Other indicia that P&S was only dealing

with Ultimate Escapes included that the signature block on Keith's (and other's)

communications to P&S during this time period indicated he was Co-CEO of

Ultimate Escapes.  There was no suggestion of an active affiliation with Private

Escapes.  (App-0337, 0541-0542, 0544-0547, 0549-0562).

Indeed, Private Escapes and Ultimate Escapes never shared a common

business interest beyond the so-called merger.  When Private Escapes sold its

assets to Ultimate Escapes, the two companies ceased any connection with one

another.  Thus, when Keith was acting on behalf of Ultimate Escapes after the

formation of Ultimate Escapes, he was acting on behalf of Ultimate Escapes.

These facts must be considered in evaluating coverage, because, unlike the

duty to defend, the duty to indemnify requires development of a full factual record.

Insurance companies cannot rely solely on the allegations in a complaint and

courts look beyond the policy and complaint and consider extrinsic evidence to

assist in determining whether and to what extent liability is covered by a policy.

*See Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 301-02 (Colo.

2003).  *See also Employers' Fire Ins. Co. v. W. Guar. Fund Services*, 924 P.2d

128134323.2

1107, 1110 (Colo. App. 1996); *Am. Family Mut. Ins. Co. v. Zurich Am. Ins. Co.*, 2013 WL 3851216, at *2 (D. Colo. 2013).  In this case, National Union failed to conduct any investigation, let alone a good faith investigation (the same claims adjuster who handled the Jupp claim left her position and her boss forgot about the claim), into the facts and capacity in which Keith was acting when he made misrepresentations about the 2010 Settlement Agreement.

This interpretation is entirely inconsistent with how National Union correctly interpreted the Policy and evaluated the basis of Keith's virtually identical claim for coverage of the Jupp case.  As described above, in the Jupp matter National Union investigated facts outside of Jupp's complaint in order to ascertain the capacity in which Keith was acting when he made misrepresentations to Jupp after Ultimate Escapes' formation.  Even though Jupp's complaint (like P&S') alleged that Keith was an executive of both Ultimate Escapes and Private Escapes, National Union covered the claim on the basis that at the time Keith made the misrepresentations (the same time-frame and position he was in during the negotiations over the 2010 Settlement Agreement) he was acting in his capacity as an executive of Ultimate Escapes.  *Id.*  Indeed, National Union indemnified Keith under the Policy for that claim which involved facts nearly identical to this case.

As described above, Peter Jupp was a member of Private Escapes and shortly after the formation of Ultimate Escapes, was advised that he needed to sign

128134323.2

a new membership agreement with Ultimate Escapes - - just as Ultimate Escapes had advised P&S.  Just like P&S, Jupp concluded that none of the new agreement options were as beneficial as the agreement Jupp had with Private Escapes and demanded reimbursement of his deposit.  At the same time P&S was negotiating with Keith, Jupp was also negotiating his dispute with Keith and after failing to resolve the issue, Jupp sued Private Escapes, Ultimate Escapes, and Keith for breach of contract, violation of the CPA, and breach of fiduciary duty.[3]

When Keith sought coverage for Jupp's claims under the Policy, National Union acknowledged that "limited coverage [was] afforded to Richard Keith as co-CEO at Ultimate Escapes, Inc."  (App. 843).  *See also* (App-0593 [Sadoff Dep. 91:7-20]; App-0594-0598 [97:16-101:4]; App-0599-0608 [102:4-111:8]).  While National Union discussed the Specific Entity Exclusion in its coverage letter, it did not deny coverage on its account.  (*Id.* at App-0845).  Rather, National Union recognized that it needed to investigate and review facts beyond the allegations in Jupp's complaint to ascertain the capacity in which Keith was acting when he made the misrepresentations concerning Ultimate Escapes.  (*Id.*).  On October 27, 2011, after determining that Keith made the misrepresentations on behalf of

---

[3] This is strikingly similar to the claims that P&S made against Keith.  The fact that P&S did not name Ultimate Escapes as a defendant in its complaint is a distinction without a difference.  At the time Jupp filed his complaint, Ultimate Escapes had not yet or just filed for bankruptcy.  Because Ultimate Escapes filed for bankruptcy and although it was still named a defendant in the action, it never appeared in the case.  To the extent the District Court considered this difference in its decision, (*see* App-0815), it erred.

Ultimate Escapes, National Union issued a check to Jupp to settle his claims against Keith.  (App-0627-0632; App-0597-0598).

National Union should be charged with knowledge of its findings from the Jupp matter, as well as any additional facts gathered during discovery.  And it should be noted that notwithstanding its obligations in this regard, even after the filing of the Amended Complaint in this action, National Union repeatedly indicated it was "without knowledge or information sufficient to form a belief as to the truth of" the vast majority of the facts associated with Keith's claim for coverage.  *See* generally, Answer of Defendant National Union Fire Ins. Co. of Pittsburgh to Plaintiff's Amended Complaint (App-0170-0184).

In the District Court case, National Union relied on *Foodtown v. National Union Fire Ins. Co. of Pittsburgh*, 412 Fed.Appx. 502 (3rd Cir. 2011) to support its position that the Policy's Specific Entity Exclusion precludes coverage in this case. *Foodtown*, however, involves facts materially different from the ones here.  There, the insured, Foodtown, and the excluded entity, Twin County Grocers, were part of the same grocery cooperative.  When Foodtown settled with the trustee of Twin County Grocers it was settling claims on behalf of itself, and its members, Food King and Twin County Grocers.  The subsequent allocation of settlement obligations was also on behalf of itself <u>and</u> its members, Food King and Twin County Grocers.  Thus, when Foodtown unfairly apportioned the settlement costs it

was acting, at least in part, on behalf of its member Twin County Grocers, the excluded entity.

In this case, Keith was not acting on behalf on Private Escapes when he made misrepresentations to P&S about the 2010 Settlement Agreement, but rather he was acting in his capacity as an executive of Ultimate Escapes. This is so even though he may still have been in name an executive of Private Escapes—or at least there is a question of fact in that regard.

Further, this Court is not bound by Third Circuit precedent and should instead construe the Exclusion's language in accordance with the well settled principle that exclusions are to be read narrowly and in conjunction with the Policy's broad grant of coverage. This is achieved by awarding coverage for a loss caused by the wrongful act of an Ultimate Escapes' executive, as long as the executive is acting in his capacity as executive of Ultimate Escapes. Under such an interpretation, the Exclusion precludes coverage in a subset of circumstances involving Private Escapes and its executives, but continues to afford broad coverage for Ultimate Escapes and its executives.

### 4. The exception to the Specific Entity Exclusion renders the Exclusion inapplicable.

Further, the exception to the Exclusion set forth in the Exclusion applies. The exception provides that National Union will cover a claim connected with Private Escapes as long as the claim is instigated and continued totally independent

128134323.2

of Private Escapes and its executives.  As discussed in detail above, P&S is only seeking coverage under the Policy for Keith's wrongful acts taken on behalf of Ultimate Escapes (*i.e.*, misrepresentations regarding the 2010 Settlement Agreement).  It is not seeking coverage for Keith's wrongful acts taken on behalf of Private Escapes (i.e., misrepresentations regarding 2007 Membership Agreement with Private Escapes).  Keith's misrepresentations on behalf of Ultimate Escapes are separate and independent from his earlier misrepresentations made on behalf of Private Escapes.  That the claims were brought in the same complaint as different and separate claims does not change the fact that the claims against Keith arising out of his conduct as an executive of Ultimate Escapes are separate.

The District Court rejected this interpretation, finding that it only applied to security claims.  This is an incorrect reading of the exception.  The phrase "unless such Claim is instigated and continued totally independent of…" refers to any of the claims against Private Escapes and not just to a claim brought by a "security holder."  At a minimum, this clause is ambiguous, precluding summary judgment.

**B.    The Specific Entity Exclusion Is, At the Very Least, Ambiguous and Parole Evidence Creates Issues of Fact Precluding Summary Judgment.**

P&S has demonstrated that the Specific Entity Exclusion's plain language does not clearly and unambiguously preclude coverage.  In fact, P&S has offered a

31

reasonable interpretation of the exclusion which does not preclude coverage under the facts of this case. Even if this Court determines that National Union has also offered a reasonable interpretation, the exclusion must be deemed ambiguous and resolved in favor of coverage for P&S. *Cont'l W. Ins. Co. v. Shay Const., Inc.*, 805 F.Supp.2d 1125, 1128 (D. Colo. 2011) (citing *Hecla Mining Co. v. New Hampshire Ins. Co.*, 811 P.2d 1083, 1090 (Colo. 1991)). The following extrinsic evidence favors coverage for P&S' claims.

### 1. National Union covered a nearly identical claim under the Policy.

As noted above, there is nothing materially different between Jupp's case and P&S' case for purposes of whether the Policy provides coverage and specifically whether Exclusion 34 applies to bar coverage. National Union's decision not to exclude coverage under the Specific Entity Exclusion in that matter shows that this case is also covered under the Policy, or at the very least that the Exclusion is ambiguous. *Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 106-107 (D.N.J. 1990); 9A Couch on Ins. § 138:43 (2014).

### 2. It was reasonable for Ultimate Escapes to expect that its executives' wrongful acts would be covered under the Policy if they were acting in their capacities as Ultimate Escapes' executives.

"Exclusionary language that conflicts with the objectively reasonable expectations of the insured is not enforceable." *Dupre v. Allstate Ins. Co.*, 62 P.3d

1024, 1028 (Colo. App. 2002) (citing *Tepe v. Rocky Mountain Hosp. & Med. Servs.*, 893 P.2d 1323, 1328 (Colo. App. 1994). When Ultimate Escapes purchased its Executives and Officers Policy, it was reasonable for it to expect that its executives, even those who were former and current executives of Private Escapes, would be covered under the Policy as long as they were acting in their capacity as executives of Ultimate Escapes when they committed a wrongful act. Given the exclusionary language, it was also reasonable for Ultimate Escapes to expect that any loss arising out of the wrongful act of a current or former Private Escapes' executive taken on behalf of Private Escapes would not be covered under the Policy. It is unreasonable, however, to expect that the Policy would not provide coverage for a wrongful act taken by an Ultimate Escapes executive in his or her capacity as an Ultimate Escapes executive just because he or she was a former or current executive of Private Escapes. Because National Union's interpretation of the Exclusion conflicts with P&S' objectively reasonably expectations, it should not be enforced.

> **3.      National Union's broad interpretation of the Specific Entity Exclusion should be rejected because it would lead to an absurd result.**

Finally, National Union's broad interpretation of the Specific Entity Exclusion should be rejected because it would lead to an absurd result by precluding coverage in a large number of cases. *See Atmel Corp. v. Vitesse*

*Semiconductor Corp.*, 30 P.3d 789, 793 (Colo. App. 2001) ("Moreover, a contract

should never be interpreted to yield an absurd result."), *overruled on other grounds*

*by Ingold v. AIMCO/Bluffs, LLC Apartments*, 159 P.3d 116, 124 (Colo. 2007));

*Mid Century Ins. Co. v. Gates Rubber Co.*, 43 P.3d 737, 740 (Colo. App. 2002)

(holding that a contract should not be read to yield an absurd result); *Engineered*

*Data Prods., Inc. v. Nova Office Furniture, Inc.*, 849 F.Supp. 1412, 1417 (D. Colo.

1994) ("Construction of a contract should be reasonable and not lead to an absurd

result.").  Under National Union's interpretation as accepted by the District Court,

Ultimate Escapes would never be able to obtain coverage for (1) Keith's wrongful

acts; or (2) any wrongful act of an employee or executive who worked for Private

Escapes before joining Ultimate Escapes.  This is because those individuals will

always have some "connection" with Private Escapes.  Such an interpretation

would lead to an absurd result—and defeat the purpose of purchasing the Policy—

because the Policy's broad grant of coverage would be swallowed up by the

exclusion in every situation involving a Private Escapes' executive and employee.

## II. BECAUSE THE LOWER COURT GRANTED SUMMARY JUDGMENT ON P&S' COMMON LAW AND STATUTORY BAD FAITH CLAIMS SOLELY ON THE BASIS OF ITS INCORRECT CONCLUSION REGARDING COVERAGE, THE SUMMARY JUDGMENT ON THE BAD FAITH CLAIMS SHOULD BE REVERSED.

P&S demonstrated that there is coverage, or at least issues of material fact as

to whether there is coverage, under the Policy.  As a result, P&S' claim that

128134323.2

National Union engaged in bad faith delay and denial of coverage does not fail as a

matter of law.  As this is the only basis the lower court cited for summary

judgment on this claim, summary judgment should be reversed in this regard, as

well.

Moreover, as described above, there are significant facts upon which the jury

may rely in determining Nation Union breached its duty of good faith through bad

faith delay and denial of coverage.  For example, National Union violated its own

policy and industry standard by not making and not providing its coverage decision

for more than 8 months.  (App-0345).  Further, its conduct in repeatedly promising

its decision to Keith throughout that time, even as Keith's counsel was repeatedly

requesting the decision and coverage and indicating the prejudice to Keith caused

by that delay provides support for a bad faith finding.  (App-0356-0358; 0366-

0372; 0374-0379; 0382-0384).  Its repeated transfer of the claim file after months

without issuing a decision demonstrates a total disregard of its duty to process and

review the claim timely and in good faith.  (*Id.*)  And its failure to accurately

answer the interrogatory (under oath) as to who at National Union "participated in

the decision to deny coverage for Keith's claim …" demonstrates a complete lack

of attention to the claim, at best.  (App-0750).

Further, when after all that delay, National Union spent such short time and

undertook such a limited, cavalier, and shallow review, demonstrates a total lack of

required attention, investigation and review to have met its good faith requirements. All of that, coupled with the fact that National Union handled the virtually identical claim of Jupp inconsistently, supports a finding of bad faith. *See e.g. Diamond State Ins. Co. v. Utica Fist Ins. Co.*, 37 A.D. 3d 160, 161, 829 N.Y.2d 465, 466 (NY Sup. App. 2007) (holding that insurer's prior interpretation of the exclusion at issue "directly reflects on whether its proffered interpretation and its refusal to settle in this case were in bad faith.").

Similarly, because P&S has shown that there is coverage under the Policy, or at least material facts concerning coverage under the Policy, P&S' statutory claim under C.R.S. §§ 10-3-1115 and 1116 did not fail as a matter of law. As this is the only basis on which the District Court granted summary judgment on this claim, it too must be reversed.

## CONCLUSION

For the above stated reasons, P&S respectfully requests that this Court reverse the Order of the District Court in its entirety and remand for trial on the merits.

## STATEMENT OF COUNSEL AS TO ORAL ARGUMENT

This appeal raises issues of contract interpretation, interpretation of parole evidence, and whether National Union identified genuine issues of material fact under the correct interpretation. P&S requests the ability to address these issues

and how these issues collectively demonstrate reversal is required through oral

argument.

Dated this 26th day of October, 2015.

Respectfully submitted,


*s/ Leonard H. MacPhee*

Leonard H. MacPhee
Perkins Coie LLP
1900 16th Street, Suite 1400
Denver, CO  80202-5255
Tel:  (303) 291-2300
LMacPhee@perkinscoie.com

Attorneys for Appellant P&S, LLC

37

## CERTIFICATE OF COMPLIANCE

I certify that the total number of pages I am submitting as my

Appellant/Petitioner's Opening Brief is 30 pages or less or alternatively, if the total

number of pages exceeds 30, I certify that I have counted the number of words and

the total is 7,960, which is less than 14,000.  I understand that if my

Appellant/Petitioner's Opening Brief exceeds 14,000 words, my brief may be

stricken and the appeal dismissed

Dated this 26th day of October, 2015.


By:     *s/Leonard H. MacPhee*
        Leonard H. MacPhee

## CERTIFICATE OF DIGITAL SUBMISSION AND
## PRIVACY REDACTIONS

I hereby certify that a copy of the foregoing **APPELLANT'S OPENING BRIEF**, as submitted in Digital Form via the court's ECF system, is an exact copy of the hard copy document filed with the Clerk.

I also certify that the electronic file has been scanned for viruses with Microsoft's System Center Endpoint Protection, Antimalware Client Version 4.8.204.0, Engine Version 1.1.12205.0, Antivirus definition 1.209.466.0, last updated on 10/26/15, and, according to the program, are free of viruses.

In addition, I certify all required privacy redactions have been made.

By:    *s/Cecily Winmill*
           Cecily Winmill
           Legal Secretary (Digital)

128134323.2

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a copy of this **APPELLANT'S OPENING BRIEF** was served on October 26, 2015 via the CM/ECF system which will send notification of such filing to the last known email addresses below:

- Timothy R. Macdonald
  Timothy.Macdonald@aporter.com

- Paul W. Rodney
  Paul.Rodney@aporter.com

- Edwin Packard Aro
  ed.aro@aporter.com


*s/ Leonard H. MacPhee*
Leonard H. MacPhee
Perkins Coie LLP
1900 16th Street, Suite 1400
Denver, CO  80202-5255
Tel:  (303) 291-2300
Email:  lmacphee@perkinscoie.com

Attorneys for Appellant
P&S LLC

128134323.2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No.  14-cv-00735-LTB-CBS

P&S LLC,

        Plaintiff,

v.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,

        Defendant.

---

## ORDER

---

This matter is before me on a Motion for Summary Judgment filed by Defendant, National Union Fire Insurance Company of Pittsburgh, PA ("National Union") in which it seeks entry of judgment in its favor and against Plaintiff, P&S LLC ("P&S"). [**Doc #45**]  Oral arguments would not materially assist me in my determination.  After consideration of the parties' briefs and attachments, and for the reason stated, I GRANT National Union's Motion for Summary Judgment and, as such, I DISMISS this case.

### I. BACKGROUND

During the summer of 2007, the manager at P&S contacted Private Escapes Platinum LLC ("Private Escapes") seeking membership in its luxury destination travel club.  Mr. Richard Keith was the CEO of Private Escapes.  On September 13, 2007, Private Escapes announced it would be merging with Ultimate Resorts LLC, to create a new entity called Ultimate Escapes Holdings, LLC ("Ultimate Escapes").

Before the merger, P&S entered into a Membership Agreement with Private Escapes on December 7, 2007.  P&S paid $215,000 to Private Escapes as a membership deposit and agreed to pay annual dues, and future usage fees.  P&S asserts that Mr. Keith induced it to enter into the agreement because he represented that P&S's benefits under the Membership Agreement would be protected or grandfathered after the planned merger.   In May of 2008, Private Escapes and Ultimate Resorts announced that they had merged to create Ultimate Escapes.  Although the timing is unclear, it appears that about that time Mr. Keith became Co-CEO of Ultimate Escapes.

After the merger, P&S was informed that it was now a member of Ultimate Escapes and that the terms of its Membership Agreement with Private Escapes would not be honored. Instead, P&S would be required to sign a new agreement with Ultimate Escapes in order to continue its travel club membership.  Thereafter, P&S sought a refund of its membership deposit from Private Escapes.  Ultimately, on July 23, 2010, P&S entered into an agreement with Private Escapes and Ultimate Escapes in which Private Escapes and Ultimate Escapes agreed to pay P&S $135,000, in 18 installments, as "a partial refund of the Membership Fee" (the "2010 Settlement Agreement").  After Private Escapes and Ultimate Escapes failed to make the first settlement payment on August 1, 2010, P&S sent them notices of default.  Then, on September 15, 2010, P&S filed a lawsuit against Private Escapes and Ultimate Escapes for breach of the 2010 Settlement Agreement.  Directly thereafter, on September 20, 2010, Ultimate Escapes filed for Chapter 11 bankruptcy protection.  As such, the lawsuit was stayed and eventually administratively closed.

Then, on May 20, 2011, P&S filed a complaint against Private Escapes and Richard Keith, as its CEO, in Denver County District Court (Case No. 11CV3742).  In this underlying

lawsuit, P&S alleged that Mr. Keith induced P&S to sign the Membership Agreement with

Private Escapes by making misrepresentations about having grandfathered rights after the

pending merger.  In addition, P&S alleged that they failed to disclose Ultimate Escapes'

financial situation when negotiating and signing the 2010 Settlement Agreement.  With regard to

the underlying lawsuit, Mr. Keith sought defense coverage from Continental Casualty as Private

Escapes' insurance carrier who, in turn, provided Mr. Keith a defense.  Mr. Keith also sought

defense coverage from National Union under the Executive & Organization Liability Insurance

Policy # 01-317-72-99 (the "Policy") issued to Ultimate Escapes.  National Union declined to

provide Mr. Keith with a defense and denied coverage based on the Policy's Specific Entity

Exclusion – which provided that National Union  ". . . shall not be liable for any Loss in

connection with any Claim made against . . . [Private Escapes] . . . and/or any Executive or

Employee thereof . . . " – via denial letter dated February 9, 2012.

On February 13, 2013, P&S settled the underlying lawsuit with Private Escapes, Mr.

Keith, and Continental Casualty.  Continental Casualty agreed to pay P&S $25,000.  In addition,

Mr. Keith also agreed to a stipulated judgment in P&S's favor (in the amount of $450,000) and

assigned his rights against National Union under the Policy to P&S.

P&S then filed this lawsuit (as Mr. Keith's assignee) against National Union in Boulder

County District Court (Case No. 14CV30016) on January 8, 2014.  National Union filed a Notice

of Removal to this Court, on March 11, 2014, based on diversity jurisdiction pursuant to 28

U.S.C. §§ 1332, 1441 & 1442. [Doc #1]  In its Amended Complaint, P&S seeks declaratory

judgment, damages, and statutory damages with respect to benefits due, but unreasonably

withheld by National Union under the Policy issued to Ultimate Escapes.  It avers that National

Union owed coverage to Mr. Keith under the Policy for Executive & Organization liability coverage, but has refused to provide coverage.  [Doc #32]   P&S asserts claims for:  1) Declaratory Judgment, in the form of a declaration that the stipulated judgment in the underlying lawsuit is a loss covered under the Policy; 2) Breach of Contract for refusing or failing to pay loss arising from Mr. Keith's wrongful acts that are covered under the Policy; 3) Breach of Duty of Good Faith and Fair Dealing/Bad Faith Denial of Insurance Coverage; and 4) Violations of Colorado Revised Statutes §10-3-115 and §10-3-116 for unreasonable delay and/or denial of payment for Mr. Keith's claim for benefits under the Policy. [Doc #32]

## II. STANDARD OF REVIEW

National Union seeks summary judgment in its favor on P&S' claims against it and, as such, dismissal of this case. The purpose of a summary judgment motion under Fed.R.Civ.P. 56 is to assess whether trial is necessary.  *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).  Fed.R.Civ.P. 56(c) provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The non-moving party has the burden of showing that there are issues of material fact to be determined.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## III.  COVERAGE EXCLUSION

In this motion, National Union argues that the Policy does not provide coverage for P&S's underlying claims pursuant to the "Specific Entity Exclusion" which excludes coverage for any loss in connection with any claim made against Private Escapes or its executives.

National Union asserts that the Specific Entity Exclusion applies, as a matter of law, to bar coverage of the claims in P&S's underlying lawsuit brought against Private Escapes and Richard Keith.

With regard to the law related to insurance contract interpretation, the parties appear to agree that Colorado law applies. In its motion, National Union argues that it prevails "regardless of which state's law is applied," including Colorado. P&S cites to Colorado contract interpretation law in its briefing. Thus, I apply the general standards of insurance contract interpretation as set forth under Colorado law.

An insurance policy is a contract, which should be interpreted consistently with the well-settled principles of contractual interpretation. *Chacon v. Am. Family Mut. Ins. Co.*, 788 P.2d 748, 750 (Colo. 1990). As such, the words of the contract should be given their plain meaning according to common usage, and strained constructions should be avoided. *Allstate Ins. Co. v. Starke*, 797 P.2d 14, 18 (Colo. 1990). Insurance contracts are not to be technically construed, but are to be "construed as they would be understood by a person of ordinary intelligence." *State Farm Mut. Auto. Ins. Co. v. Nissen*, 851 P.2d 165, 167 (Colo.1993) Policy provisions that are clear and unambiguous should be enforced as written. *Chacon v. Am. Family, supra,* 788 P.2d at 750. A policy term is ambiguous if it is reasonably susceptible to more than one meaning. *Terranova v. State Farm Mut. Auto. Ins. Co.*, 800 P.2d 58, 60 (Colo. 1990).

"[T]o benefit from an exclusionary provision in a particular contract of insurance the insurer must establish that the exemption claimed applies in the particular case, and that the exclusions are not subject to any other reasonable interpretation." *Broderick Inv. Co. v. Hartford*

*Acc. & Indem. Co.,* 954 F.2d 601, 606 (10th Cir. 1992)(applying Colorado law); *Hecla Mining Co. v. New Hampshire Ins. Co.*, 811 P.2d 1083, 1090 (Colo. 1991). The insured has the burden to show that a claim is covered by the policy. Once met, the burden shifts to the insurer to show that a covered claim falls solely and entirely within a policy exclusion. *Prudential Prop. & Cas. Co. v. LaRose*, 919 P.2d 915, 917 (Colo. App. 1996). The interpretation of an insurance policy is a legal question. *Allstate Ins. Co. v. Huizar*, 52 P.3d 816, 819 (Colo. 2002).

Endorsement #34 of the Policy contains the Specific Entity Exclusion, which provides that:

> In consideration of the premium charged, it is hereby understood and agreed that the Insurer shall not be liable for any Loss in connection with any Claim made against or brought by or on behalf of any entity(ies) listed below and/or any Executive or Employee thereof; or by any security holder of the Organization whether directly or derivatively, unless such Claim is instigated and continued totally independent of, or without the intervention of such entity(ies) and/or any Executive or Employee thereof. . . : Private Escapes Holdings, LLC (including any subsidiary or affiliate thereof)

National Union asserts, in support of its motion, that the Specific Entity Exclusion is unambiguous and clearly applies to bar coverage of the claims raised by P&S in the underlying lawsuit against Private Escapes and Mr. Keith. Specifically, the exclusion indicates that National Union is not "liable for *any* Loss ***in connection with*** *any* Claim made against . . . [Private Escapes] . . . and/or any Executive of Employee thereof" (emphasis added). The exclusion only requires that a loss is made "in connection" with a claim against Private Escapes for it to be excluded from coverage. Here, the underlying lawsuit raises claims against Private Escapes and, as such, constitutes a loss in connection with a claim against Private Escapes.

6

P&S argues, in response, that the Specific Entity Exclusion does not unambiguously preclude coverage.  In so arguing, P&S first notes that it is undisputed that the Policy provides broad coverage for the wrongful actions of Ultimate Escape executives when the executive is acting in his or her capacity as executive of Ultimate Escapes.  P&S contends that because it alleged, in the underlying lawsuit, that Mr. Keith committed wrongful acts while acting in his capacity as an executive of Ultimate Escapes – specifically, when he made misrepresentations and misleading statements and/or omissions to P&S regarding Ultimate Escape's financial situation and ability to pay its obligation to P&S in the 2010 Settlement Agreement – those wrongful acts are covered by the Policy.  And, while the Specific Entity Exclusion precludes coverage of losses when a Private Escapes executive commits a wrongful action, while acting in his or her capacity as an executive of Private Escapes, it should be narrowly interpreted to not apply when it is alleged, as here, that Mr. Keith's alleged wrongful acts were committed on behalf of Ultimate Escapes.  *See Continental Western Ins. Co. v. Shay Const., Inc.,*  805 F.Supp.2d 1125, 1128 (D.Colo. 2011)(noting that exclusions and limitations on coverage are to be given a narrow construction). Thus, P&S asserted that to the extent Mr. Keith was acting solely in his capacity as an executive of Ultimate Escapes, the Specific Entity Exclusion does not apply.

In support of this interpretation, P&S relies upon National Union's decision to provide a defense and coverage to Mr. Keith in a lawsuit filed by another Private Escapes member against Ultimate Escapes, Privates Escapes, and Richard Keith acting in his capacity as CEO of Private Escapes and "Co-CEO" of Ultimate Escapes.  P&S argues that the facts of that case, as well as the claims raised, are virtually identical to the facts and claims raised here.  *See Jupp v. Private*

*Escapes Platinum, LLC, et. al.*, 10-cv-2290-DME-MEH.  Because National Union agreed to

provide Mr. Keith with a defense and (ultimately) coverage in that case, it must have made a

determination that the Specific Entity Exclusion did not apply.  As a result, P&S asserts that the

National Union interpreted the exclusion consistent with coverage for Mr. Keith when his

wrongful actions where as an executive of Ultimate Escapes, even when the alleged loss was in

connection with a claim made against Private Escapes.  Thus, at a minimum, the exclusion can

be reasonably interpreted as to not be applicable here.  As such, P&S argues that it is ambiguous

and must be construed in favor of coverage.  *See Continental Western v. Shay Const., supra,* 805

F.Supp.2d at 1128 (if a contractual provision is reasonably susceptible to different meanings, it is

ambiguous and must be construed against the drafter and in favor of providing coverage to the

insured).

First, to the extent that P&S is asserting that the exclusion does not apply because Keith's

wrongful acts can be clearly attributed to either Private Escapes (prior to the merger) or to

Ultimate Escapes (after the merger), I find that the minimal case law cited does not support this

distinction.  *See Continental Cas. Co. v. Adams,* 2003 WL 22162379 (M.D. Pa. 2003)

(unpublished)(holding that claims brought against named insureds were excluded where those

claims were closely connected to the named insureds' activities as agents of an uninsured

affiliate corporation); *see also Yocum v. St. Paul Mercury Ins. Co.*, 2010 WL 2179137 (E.D. Ark.

2010) (unpublished).

More importantly, I disagree with P&S that the Specific Entity Exclusion is ambiguous.

By its own plain language, the exclusion apply to any loss "in connection with" any claim

against Private Escapes or its executives.  Here, the underlying lawsuit is brought against Private

Escapes and Mr. Keith in his capacity as a Private Escapes' executive.  To the extent that the factual assertions within the complaint include an allegation that Mr. Keith wrongfully acted in the underlying situation as an Ultimate Escapes' executive, it does not change the fact that the loss alleged was in connection with a claim against Private Escapes.  As such, it is unambiguously applicable to bar coverage for the loss claimed here.

In so finding, I reject P&S's characterization of National Union's decision to provide a defense and coverage (under a reservation of rights) in a different case as relevant to an interpretation of the unambiguous Specific Entity Exclusion in this matter.  While it is clear that the relief sought in that case was based on the same Policy and essentially the same claims as the underlying lawsuit in this case, I disagree that the decision by National Union was based on a reasonable interpretation of the Specific Entity Exclusion.  I note that National Union only acknowledged that Mr. Keith was afforded "limited coverage . . . as co-CEO at Ultimate Escapes" and the claims in that case raised were against Ultimate Escapes as a named Defendant.

Furthermore, I reject P&S's argument that an "exception to the exclusion" reinstates coverage in this case.  P&S maintains that the Specific Entity Exclusion provides coverage for a claim connected with Private Escapes when it is "instigated and continued totally independent of" Private Escapes and its executives.  Because P&S is only seeking coverage for Mr. Keith's wrongful acts done on behalf of Ultimate Escapes (as opposed to his acts taken on behalf of Private Escapes) P&S asserts that the acts are separate and independent and, thus, fall within the exception to the exclusion.  First, under the language of the Specific Entity Exclusion, it is not the *acts* of the executive that are at issue, but rather whether the *claim* is instigated and continued totally independent of the entity.   Moreover, a reading of the entire Specific Entity Exclusion is

clear that the exception for a claim "instigated and continued totally independent of, or without the intervention of" the excluded entity applies to a loss "by any security holder of the Organization."

Finally, I reject P&S's assertion that the exclusionary language conflicts with Ultimate Escape's objectively reasonable expectations – i.e. that, as the insured, they would expect coverage for Mr. Keith when acting in his capacity as an Ultimate Escape executive – or that an interpretation of the Specific Entity Exclusion defeating coverage "would lead to an absurd result" in that it would preclude coverage in a large number of cases.  Such arguments are not only cursory and unsubstantiated, but are contrary to the unambiguous language of the exclusion.

Accordingly, I agree with National Union that the exclusion only requires that the claim against the executive be made in connection with a claim against Private Escapes.  Here, the loss sought from Mr. Keith's actions were clearly a loss in connection with a lawsuit against Private Escapes.  *See generally Foodtown Inc. v. National Union Fire Ins. Co. of Pittsburgh, PA,* 412 Fed.Appx. 502, 509 (3rd Cir. 2011)(not selected for publication).  As such, I agree that the exclusion is unambiguous and applies here.   I find that National Union has met its burden to prove that the Specific Entity Exclusion applied with regard to the claim raised against Mr. Keith in the underlying lawsuit as a matter of law.  Thus, National Union is entitled to summary judgment as to P&S's claims, as Mr. Keith's assignee, for Declaratory Judgment that Mr. Keith's losses are covered under the Policy, and for Breach of Contract for refusing to pay losses arising from Mr. Keith's wrongful acts.

## IV.  BAD FAITH CLAIMS

In addition, because I have ruled that the plain language of the Specific Entity Exclusion

Appellate Case: 15-1308   Document: 01019513378   Date Filed: 10/26/2015   Page: 58

bars coverage for Mr. Keith in the underlying lawsuit, I likewise conclude that P&S's claims seeking relief under common law and statutory bad faith are likewise foreclosed as a matter of law. *See Prospect Resources, Inc. v. St. Paul Fire & Marine Ins. Co.,* 2012 WL 263394 (D. Colo. 2012) (not selected for publication)(ruling that because it found that the insurer had no duty to defend or indemnify, "no reasonable juror could find that it was unreasonable for the Defendants to deny payment of the claim in this case"); *see also Berry & Murphy, P.C. v. Carolina Cas. Ins. Co.,* 586 F.3d 803, 815 (10th Cir. 2009)(ruling that when an insurer "had no legally cognizable duty to defend or indemnify a claim, plaintiffs' bad faith claim also cannot survive"). As a result, National Union is also entitled to summary judgment as to P&S's claims, as Mr. Keith's assignee, for the Breach of Duty of Good Faith and Fair Dealing/Bad Faith Denial of Insurance Coverage, and for Violations of Colorado Revised Statutes §10-3-115 and §10-3-116.

ACCORDINGLY, I GRANT the Motion for Summary Judgment filed by Defendant, National Union Fire Insurance Company of Pittsburgh, PA. [**Doc #45**] As such, JUDGMENT ENTERS in favor of Defendant and against Plaintiff, P&S LLC, and this case is DISMISSED and COSTS AWARDED to Defendant.

Dated: July   29   , 2015 in Denver, Colorado.

BY THE COURT:

   s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No. 14-cv-00735-LTB-CBS

P&S LLC, a Colorado Limited Liability Company,

      Plaintiff,

v.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, a Capital
Stock Company,

      Defendant.

---

**FINAL JUDGMENT**

---

      PURSUANT to and in accordance with Fed. R. Civ. P. 58(a) and the Order

entered by the Honorable Lewis T. Babcock on July 29, 2015, and incorporated herein

by reference as if fully set forth, it is

      ORDERED that the Motion for Summary Judgment filed by Defendant, National

Union Fire Insurance Company of Pittsburgh, PA is GRANTED.  It is

      FURTHER ORDERED that final judgment is hereby entered in favor of

Defendant,  National Union Fire Insurance Company of Pittsburgh, PA and against

Plaintiff, P&S LLC.  It is

      FURTHER ORDERED that Defendant, National Union Fire Insurance Company

of Pittsburgh, PA, shall have its costs by the filing of a Bill of Costs with the Clerk of this

Court within fourteen days of the entry of judgment, pursuant to Fed. R. Civ. P. 58(a)

and D.C.COLO.LCivR 54.1.  It is

      FURTHER ORDERED that Plaintiff's Amended Complaint and this civil action are

Appellate Case: 15-1308    Document: 01019513378    Date Filed: 10/26/2015    Page: 60

DISMISSED with prejudice.


DATED at Denver, Colorado this __29th__ day of July, 2015.


FOR THE COURT:

JEFFREY P. COLWELL, CLERK


By: s/Emily Buchanan
Emily Buchanan, Deputy Clerk